**MITTANCK v. DOMINY et al.    (No. 7774.)**

Court of Civil Appeals of Texas.  San Antonio.
May 11, 1927.

Rehearing Granted June 29, 1927.

1. **Appeal and error ⟪719(1)—Defense, not urged on appeal, that settlement agreement was procured by threats of exposure, will not be considered.**

Defense, not urged on appeal, that settlement agreement sought to be enforced, was contrary to public policy as procured by threats of exposure of defendant through carefully guarded evidence of undisclosed nature, will not be considered.

On Motion for Rehearing.

2. **Accord and satisfaction ⟪17—Compromise and settlement ⟪20(1)—Plaintiff, not leaving community, dismissing suit, and obtaining signature of release by defendant's attorney, as agreed, could not enforce settlement agreement.**

Where one plaintiff did not absent herself from community and dismiss suit against defendant's brother-in-law as agreed, and written accord or release was not countersigned by defendant's attorney, which was condition precedent to performance by defendant, plaintiffs could not enforce settlement agreement, but were relegated to original cause of action, when defendant refused to perform, though they executed and tendered release, with damaging documentary evidence held by them, as agreed; there being an accord, but no satisfaction.

Appeal from Cameron County Court; C. C. Dancy, Judge.

Suit by P. F. Dominy and another against R. E. Mittanck. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Spears & Montgomery, of San Benito, for appellant.

Duval West, Jr., of Harlingen, P. F. Dominy, of San Benito, and E. T. Yates, of Brownsville, for appellees.

SMITH, J. This controversy arose over an unsuccessful effort to settle and avoid the institution of a threatened lawsuit upon a cause of action, the nature and details of which are but vaguely and remotely disclosed in the record.

It appears directly or by inference, however, that at one time Minerva Geschiedle, then a feme sole, but now the wife of E. C. Gourley, was employed as a bookkeeper or clerk by R. E. Mittanck, who was engaged in the furniture and undertaking business at San Benito, in Cameron county; that Mittanck discharged the lady from that employment, and afterwards gave utterance, in writing and perhaps by word of mouth, to statements concerning Miss Geschiedle which she regarded as libelous or slanderous, or both;

that at some undisclosed period of their acquaintance the two had some sort of "relations" of a nature not disclosed by the record, but so referred to in a power of attorney she executed in this transaction, and that he had written her a letter or letters of a nature not disclosed, and which she retained in her possession; that she obtained and retained possession of a photograph of Mittanck, and an insurance policy, as well as other "instruments in writing," but of an undisclosed nature. It further appears that for an undisclosed reason the undisclosed relations between Miss Geschiedle and Mittanck culminated in disagreement, and that the former "made trouble for" Mittanck, to whose wife she exhibited the husband's photograph. It appears further, by inference, that Mittanck received a letter from his brother-in-law, one Spradley, concerning Miss Geschiedle, who in some way learned, it is further inferred, of the contents of the letter, which she regarded as libelous. These incidents, vaguely disclosed, form the background of the present litigation.

The controversy reached the surface when P. F. Dominy, an attorney, obtained two powers of attorney from Miss Geschiedle, in one of which she empowered him to bring suit upon, and to compromise, whether in or out of court, her claim against Spradley on account of the alleged libelous letter the latter wrote Mittanck concerning her. In the second instrument she likewise empowered the attorney to sue upon and compromise her claim against Mittanck—

"for libel and slander, or either libel or slander, together with damages for firing me as his bookkeeper, or either of the same, said libel and slander being committed on or about the last of October, A. D. 1925, by stating and by writing, or either, that I, Minerva Geschiedle 'did forge a check on R. E. Mittanck, and collect the money therefor at the Farmers' State Bank of San Benito, Texas,' or for any slander or libel in connection with such statement; and I also hereby give my said attorney power to collect damages for said libel or slander, or any damages that came to me from such, either by suit or by settlement out of court, as to my said attorney may seem best for my advantage."

In both powers of attorney Miss Geschiedle assigned to the attorney 30 per cent. of whatever amount he might realize from the claims, waived all her own right to make any settlement of the claims, giving him unqualified power to release all adverse parties. Under this power the attorney, in his own behalf, as well as his client's, brought suit against Spradley, who, it appears from the record, was a resident of Gonzales county, and was insolvent. It further appears that Mittanck was solvent. This suit against Spradley was brought on November 25, 1925. The last day for service to the first ensuing term of court was December 10.

---

⟪For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The attorney also prepared a petition, in his own and his client's name and behalf, against Mittanck, but did not file it with that against Spradley, and did not intend to file it until December 10, the last day for service at the approaching term. Between December 1 and 5 Mittanck was served with some sort of process, evidently a subpœna, in the Spradley suit, and learned that Dominy, Miss Geschiedle's attorney, was about to bring suit against him in her behalf, and, professing ignorance of the purpose or effect of the proposed suit, Mittanck employed an attorney to ascertain its nature and advise him as to his probable liability. This attorney testified for Miss Geschiedle, without contradiction, that he consulted Dominy, who stated that he had filed the Spradley suit and had prepared the petition and would file it in a suit against Mittanck not later than the 10th, the last day of service; that Dominy also said that "he had letters and instruments of writing," an insurance policy and a photograph of Mittanck, "which would furnish evidence to support said suit, but he would not allow me (Mittanck's attorney) to examine these, nor would he tell me more of their contents. He said that he was also intending to file a suit in favor of Miss Geschiedle against Mittanck, based on matters growing out of a check which Mr. Mittanck had accused Miss Geschiedle of forging." His attorney reported these matters to Mittanck, but declined to advise the latter as to his probable liability, on the ground that he was without sufficient information as to the nature of Dominy's evidence to warrant an opinion. Mittanck's attorney made other efforts to ascertain the nature of the threatened suits, but without avail, and on the advice of his attorney and his banker that, if a suit "about a woman" was filed against him, the resulting publicity would hurt his business, Mittanck authorized his attorney to negotiate for a settlement and avoidance of the threatened litigation.

Further conferences between opposing counsel, aided by Mittanck's banker, resulted in a proposed settlement in which Mittanck was to pay Dominy $1,000 and his own attorney $200 in consideration of the dismissal of the Spradley suit, which Dominy insisted should be taken care of in the settlement, and of the surrender to Mittanck of the damaging photograph, insurance policy, and "all instruments of writing which might be used against him in said causes or claims," the nature of which does not appear to have ever been disclosed to Mittanck or his counsel, or in the record in the court below, or here. This proposed agreement was reported to Mittanck, who wrote his check for $1,200, out of which $1,000 was to be paid Dominy for himself and his client, and $200 to Mittanck's attorney, to whom the check was delivered, but who was to hold it until next day, when the agreement was to be finally consummated by a written release by Dominy and his client, to be prepared and executed by Dominy and countersigned by Mittanck's attorney. The next morning Dominy presented the proposed release, which, besides the consideration mentioned, contained the additional stipulation that:

"It is further agreed that the said Minerva Geschiedle is to absent herself from San Benito, and that she will remain silent and refrain from speaking of, or about, the said R. E. Mittanck, his family, his business, or of any previous connections she might have had with the said R. E. Mittanck, or his business."

In the meantime, however, Mittanck, upon investigation, decided not to carry out the agreement, and destroyed the check he had signed the day before. His reason for this course is set out in the testimony of Mark Pierce, which was denied by Dominy, and of Mittanck, which was not contradicted. Pierce testified:

"I know the parties to this suit. Mr. Dominy told me that he had some letters and writings which were damaging to Mr. Mittanck in a suit which he was about to file against Mr. Mittanck, for a lady who had been working in Mr. Mittanck's store, and asked me to see Mr. Ralston, of the Farmers' State Bank, and ask him if he couldn't get Mr. Mittanck in the notion of a settlement. There was a suit against a man by the name of Spradley, of Gonzales, but Mr. Dominy said he didn't have any money, and he couldn't get anything out of him, but that Mittanck had money, and he wanted to get after him. I saw Mr. Ralston and mentioned briefly what Mr. Dominy had said about having the letters and writings, that a suit had been filed against Spradley, Mittanck's brother-in-law, and about the suit that was about to be filed, but Mr. Ralston said it was a matter in which he did not wish to get mixed up, and didn't seem to take much interest in it. On the evening of December 10, 1925, after a settlement had been agreed on, Mr. Dominy semed to be well pleased, and said that he had not intended to file suit against Mr. Mittanck, because he did not have anything to file suit for, but that he thought that Mittanck could be scared into a settlement."

And Mittanck testified:

"The next morning, December 11, Mark Pierce asked me if I had paid money to Dominy, and I said, 'No,' and he told me not to pay, because they had framed me; that he had heard Dominy say that he did not have any evidence against me, and had nothing on me to file a suit about. I immediately went to the bank and asked Mr. Ralston if the check had been cashed, and he said it hadn't. I then told him I had been framed, and I wanted the check. He gave it to me, and I tore it up, and went to Mr. Ellis (Mittanck's attorney) and asked him if the release had been signed, and he said it had not yet been written, but that he would write it at once. I said don't write it; I have been blackmailed; and that he need not go any further with this thing."

It appears from the record that Dominy was ready, able, and willing to deliver to Mittanck or his attorney the alleged damaging evidence held by him, and would have done so, had he been paid the amount agreed upon. He was ready, also, to dismiss the Spradley suit, and did dismiss it two months later. Afterwards he brought the instant suit in his own name and that of Miss Geschiedle to enforce the settlement agreement by recovery of $1,000 from Mittanck. The cause was tried by jury, who found that the alleged agreement of settlement was "effected" by the attorneys for their principals; that Dominy and his client had performed or tendered performance of "their part" of the agreement; and that Mittanck had not performed "his part" of the agreement. Upon these findings, there being no other findings requested nor submitted, the court rendered judgment in favor of Dominy and Miss Geschiedle (who had become Mrs. Gourley) against Mittanck for $1,000. Mittanck has appealed, contending, first, that his general demurrer to appellees' petition should have been sustained, and, second, that there was neither pleading nor evidence to support the jury's finding that appellees had performed or tendered performance of their obligations under the agreement.

We have carefully examined the record and conclude that neither of appellant's contentions are sustained. While appellees' pleadings were subject to a number of special exceptions—and none are urged or presented on the appeal—it was sufficient as against a general demurrer. Appellant's general contention is that because the release tendered by appellees was never receipted for by appellant's counsel, as provided for in that instrument, appellees' obligation was never performed by them. But appellees themselves executed the release and tendered it along with the alleged damaging evidence held by them, which is all they were required or had the power to do by the agreement. They were ready, willing, and able to perform, and actually tendered full performance, in accordance with the agreement, and that is all that could be required of them. And the evidence sustained the finding.

[1] We are reluctant to affirm the judgment, but are obliged to do so upon the points raised by appellant. The apparent nature of appellees' claims against appellant, while perhaps not excusing him, does not have a particular appeal to a court either of law or equity; and appellees' threats of exposure of appellant through carefully guarded evidence of undisclosed but supposedly dangerous nature bring the transaction very nearly under the ban of public policy. But as appellant does not urge that defense on appeal, this court does not feel at liberty to do so for him.

The judgment must be affirmed.

### On Motion for Rehearing.

[2] Upon further consideration of the case, upon appellant's motion for rehearing, we have concluded that the judgment must be reversed. The record shows that, although the parties through their representatives reached an accord, there was no satisfaction thereof by either party. Appellant agreed to pay appellees $1,000 upon the doing of certain things by the latter, including the delivery of an insurance policy, a contraband photograph, and undescribed instruments in writing, alleged by appellees to be of such nature as to compromise or injure appellant if exposed to public view. In addition, the principal appellee was to absent herself from the community and permanently efface herself from the impliedly awkward situation. She was also to dismiss a pending suit against appellant's brother-in-law. So it will be seen that some of the things to be done by appellees in the matter were to be done in the future, although tender was made of immediate performance of parts of the agreement. Appellee did not absent and efface herself, she had not dismissed the suit. Nor was the written accord or release countersigned by appellant's attorney, which was a condition precedent to performance by appellant. We conclude that, in this state of the case, appellees were relegated to their original cause of action when appellant, concluding, upon information received by him, that he had been "framed," as he expressed it, refused to go forward with the agreement to settle.

Appellant's motion will be granted, the judgment of affirmance set aside, and it is now ordered that the judgment be reversed, and the cause remanded.